IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| BRENT GARVIN, d/b/a STOWAWAY STORAGE, | ) ) ) | |
| Plaintiff/Counter Defendant, | ) ) | |
| v. | ) ) | Case No. 3:11-CV-05105-BCW |
| ACUITY, a mutual insurance company, | ) ) ) | |
| Defendant/Counter Claimant. | ) | |

## ORDER

Before the Court are Defendant Acuity's Motion for Partial Summary Judgment (Doc. #23), Plaintiff Brent Garvin's Motion to Appoint Umpire (Doc. #26), Acuity's Motion to Stay Ruling on Plaintiff's Motion to Appoint Umpire (Doc. #38), and Garvin's Motion to Extend Deadlines to Designate Expert Witnesses (Doc. #50).

The Court makes the following rulings being duly advised of the premises, for good cause shown, having carefully considered the parties' arguments presented in the pleadings and at a pretrial conference, and for the reasons stated below. The Court will not address Acuity's pending motion to dismiss (Doc. #34) in this Order.

## SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is firmly established. Summary judgment is appropriate when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party meets its initial burden, the

nonmoving party must set forth specific facts showing a genuine issue for trial. Lower Brule Sioux Tribe v. S.D., 104 F.3d 1017, 1021 (8th Cir. 1997). Summary judgment is not a disfavored procedural shortcut; instead, it is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327 (internal quotation omitted).

## BACKGROUND

The following material facts are undisputed. Acuity issued an insurance policy to Garvin covering seven (7) buildings Garvin owned in Joplin, Missouri. The insurance policy's period was June 19, 2010, to June 19, 2011. On May 22, 2011, all seven (7) of Garvin's buildings were destroyed by a tornado. Garvin submitted a business loss claim to Acuity pursuant to the insurance policy covering the destroyed buildings.

The insurance policy contains a declarations page which states the "valuation basis" for the buildings is "actual cash value." The insurance policy also contains a provision (the "Appraisal Provision"), which states:

> **2. Appraisal**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Garvin and Acuity failed to reach an agreement as to the "amount of loss." On August 9, 2011, Acuity made a written demand for an appraisal pursuant to the Appraisal Provision. Garvin and Acuity each appointed an appraiser, and the appraisers could not agree on an umpire. On October 25, 2011, Garvin filed a Petition in Jasper County, Missouri Circuit Court to appoint an umpire. On November 21, 2011, Acuity removed the action to this Court and filed a counterclaim seeking declaratory judgment as to the proper measure of damages.

The parties ultimately dispute interpretations of the insurance policy. They first dispute whether the Court should determine the proper measure of damages before or after the parties complete the appraisal process. The parties also dispute the proper measure of damages pursuant to the insurance policy. Acuity argues the Court should declare, prior to selecting an umpire, that Mo. Rev. Stat. § 379.140 does not apply to the loss in this case and that the loss and damage to Garvin's buildings should be valued at "actual cash value," which should be interpreted as "fair market value." Garvin argues a judicial determination as to the proper measure of damages is not necessary unless and until the parties complete the appraisal process. Garvin further argues if the Court determines the proper measure of damages, then the Court should conclude Mo. Rev. Stat. § 379.140 applies in this case which would, therefore, override any discrepancy in the insurance policy.

## INTERPRETING THE INSURANCE POLICY

It is well settled the interpretation of an insurance policy is a question of law. Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011) (citing Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007)). The parties agree Missouri law governs this case. Missouri law governing the interpretation of an insurance policy is also well settled. "Insurance policies are contracts and the rules applicable to the construction of contracts are

applicable to insurance policies." Moore v. Commercial Union Ins. Co., 754 S.W.2d 16, 18 (Mo. App. 1988) (citation omitted).

> The cardinal rule in contract interpretation is to ascertain the intention of the parties and to give effect to that intention. Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, not on extrinsic or parol evidence. In determining whether a contract is ambiguous, words should be given their natural and ordinary meaning. A contract is ambiguous if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain. A contractual provision is not ambiguous merely because the parties disagree over its meaning.

Armstrong Bus. Servs. v. H&R Block, 96 S.W.3d 867, 874 (Mo. App. 2002) (citation omitted). Also, the Court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy. Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. 1999) (citation omitted).

Applying the rules of construction is unnecessary when a provision is clear and unambiguous. Id. If an insurance policy is unambiguous, then the Court will enforce it as written, unless a statute or public policy dictates otherwise. Council Tower Ass'n, 630 F.3d at 728 (citing Cincinnati Ins. Co. v. Bluewood, Inc., 560 F.3d 798, 802 (8th Cir. 2009)). Where language used in an insurance contract is unambiguous, all terms are given their plain, ordinary, and usual meaning. Moore, 754 S.W.2d at 18; Shahan, 988 S.W.2d at 535. "The plain or ordinary meaning is the meaning that the average layperson would understand." Shahan, 988 S.W.2d at 535.

Applying the interpretation rules to the insurance policy at issue in this case, the Court finds the Appraisal Provision is unambiguous. Garvin and Acuity disagreed on the "amount of loss," and Acuity made a written demand for an appraisal of the loss. Then, Garvin and Acuity each selected a competent and impartial appraiser. The two appraisers could not agree on selecting an umpire, so Garvin requested the umpire selection be made by a court. Therefore,

this Court must and will select an umpire. The parties' appraisers will separately determine the "amount of loss." If they disagree on the "amount of loss," then they will submit their differences to the umpire. A decision agreed to by two of three individuals (the appraisers and umpire) will be binding.

The parties disagree over the meaning of the term "amount of loss" because they each argue a different "measure of damages" applies. Thus, the parties assume the term "amount of loss" is synonymous with the term "measure of damages." The Court does not make such an assumption.

The insurance policy does not define the term "amount of loss," and the Court finds the term unambiguous. In determining whether a term is ambiguous, words are given their natural and ordinary meaning and a term is not ambiguous merely because the parties disagree over its meaning. Armstrong Bus. Servs., 96 S.W.3d at 874. The Court finds the natural and ordinary meaning of "amount of loss" is how much value was lost as a result of the damage. As discussed more fully below, the term "measure of damages" is a legal determination dictated by particular facts and circumstances of each case. The Court did not find, nor was it guided toward, any legal arguments construing the term "amount of loss" as a question of law similar to "proper measure of damages."

Notwithstanding the Court's analysis above, the proper measure of damages is a legal question. Thus, the Court will provide the parties guidance for the proper measure of damages.

## PROPER MEASURE OF DAMAGES

Regardless of whether the Court should determine the proper measure of damages before or after the parties complete the appraisal process, the parties still dispute the proper measure of damages pursuant to the insurance policy. The Court's interpretation of the measure of damages

under the insurance policy at issue is a matter of state law. Cincinnati Ins. Co., 560 F.3d at 801 (citation omitted). The proper measure of damages is a question of law for determination by the Court, and the particular facts and circumstances of each case dictate which measure of damages is appropriate. Asamoah-Boadu v. State, 328 S.W.3d 790, 796 (Mo. App. 2010); Forney v. Mo. Bridge & Concrete, Inc., 112 S.W.3d 471, 474 (Mo. App. 2003) (citation omitted). The Court will address the issue since the parties disagree, essentially, over the measure of damages.

## I. ACTUAL CASH VALUE

The insurance policy's declarations page states the "valuation basis" for Garvin's buildings is "actual cash value." The policy, however, does not define "actual cash value."

The phrase "actual cash value" has been treated by Missouri case law as meaning "fair market value." Warren Davis Props. V, L.L.C. v. United Fire & Cas. Co., 4 S.W.3d 167, 173 (Mo. App. 1999); (citing DeWitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 708 n. 6 (Mo. banc 1984); Pannell v. Mo. Ins. Guaranty Ass'n, 595 S.W.2d 339, 355 (Mo. App. 1980)). In turn, "fair market value," means "the price the property would bring if sold by a willing seller to a willing buyer who is under no compulsion to buy." Warren Davis Props. V, L.L.C., 4 S.W.3d at 173 (citing Sharaga v. Auto Owners Mut. Ins. Co., 831 S.W.2d 248, 253 (Mo. App. 1992)).

Garvin argues "actual cash value" has a contrary definition, as defined in Porter v. Shelter Mut. Ins. Co., 242 S.W.3d 385 (Mo. App. 2007). However, Porter does not apply because the Missouri Court of Appeals specifically noted "[i]t is unclear on the record before this court that Shelter's characterization of repair costs minus depreciation, as 'actual cash value,' is accurate. . . . However, because the question has not been briefed or argued, this opinion does not address whether the method employed to calculate actual cash value was appropriate." Porter, 242 S.W.3d at 387 n. 2.

Therefore, the valuation in the insurance policy should guide the appraisal as to whether Garvin sustained an actual cash value loss, i.e., a diminution in the fair market value of the buildings as a result of the wind damage.

## II.  MO. REV. STAT. § 379.140 IS INAPPLICABLE

Garvin contends Mo. Rev. Stat. § 379.140 applies in this case and establishes the measure of damages irrespective of provisions in the insurance policy because the statute extends to losses caused by risks other than fire, such as wind.  Acuity argues Mo. Rev. Stat. § 379.140 does not apply because the loss was caused by wind, not fire.  The Court disagrees with Garvin's contention and finds Mo. Rev. Stat. § 379.140 does not apply in this case.

Garvin alleges he suffered a "total loss" arising out of the incident in which his buildings were destroyed by a tornado.  Because the loss was a "total loss," Garvin argues Mo. Rev. Stat. § 379.140 is applicable, any provision in the insurance policy that conflicts with the statute is void, and, therefore, he is entitled to recover the balance of the face value of the insurance policy minus depreciation.  Alternatively, Garvin argues the Court should apply Mo. Rev. Stat. § 379.140 in light of the expansion of insurance coverage beyond losses caused by fire that has occurred since the statute was enacted in 1879 and because the insurance policy at issue covered damage caused by fire.

In this diversity case, the Court must apply Missouri law as declared by the Supreme Court of Missouri.  Council Tower Ass'n, 630 F.3d at 728 (citation omitted).  Missouri law is unclear on whether Mo. Rev. Stat. § 379.140 covers this insurance policy.  While Missouri appellate courts have stated "valued policy" statutes[1] might potentially apply to situations other than losses due to fire, the Missouri Supreme Court has not determined whether Mo. Rev. Stat. §

---

[1] Mo. Rev. Stats. §§ 379.140, 379.145, 379.160 are considered "valued policy" statutes.  See Wells v. Mo. Prop. Ins. Placement Facility, 653 S.W.2d 207 (Mo. 1983).

379.140, or another "valued policy" statute, applies to losses caused by risks other than fire. See Huth v. Gen. Accident & Life Assurance Corp., Ltd., 536 S.W.2d 177 (Mo. App. 1976) (discussing whether Mo. Rev. Stat. § 379.160 applies to losses caused by risks other than fire); see Cady v. Hartford Fire Ins. Co., 554 S.W.2d 499 (Mo. App. 1977) (discussing whether Mo. Rev. Stat. § 379.150 applies to losses caused by risks other than fire). The decisions Garvin relies upon do not conclusively establish the position of the Missouri appellate courts on this issue, much less the Missouri Supreme Court's position. Thus, this Court is left to predict how the Missouri Supreme Court would resolve this issue.

This Court starts with the statute's text, because "[t]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." State ex rel. Burns v. Whittington, 219 S.W.3d 224, 225 (Mo. 2007) (citation omitted). "In determining legislative intent, [the] Court considers the language of the statute and words employed in their plain and ordinary meaning." Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. 2008) (citation omitted). "When interpreting a statute . . . [the] Court is required to give meaning to every word of the legislative enactment." State ex rel. SSM Health Care St. Louis v. Neill, 78 S.W.3d 140, 144 (Mo. 2002) (citation omitted).

After examining the parties' arguments, the cases cited in support, and other relevant authorities, the Court predicts the Missouri Supreme Court would find Mo. Rev. Stat. § 379.140 applies only to cases involving losses caused by fire because the statute's plain language begins with "[i]n all suits brought upon policies of insurance against loss or damage *by fire* hereafter issued or renewed . . . ." Mo. Rev. Stat. § 379.140 (emphasis added).

Furthermore, the Court disagrees with Garvin's arguments based upon similar arguments, analysis, and reasoning undertaken by the Eighth Circuit in Cincinnati Ins. Co. v. Bluewood,

- 8 -

Case 3:11-cv-05105-BCW   Document 56   Filed 10/19/12   Page 8 of 11

Inc., 560 F.3d 798 (8th Cir. 2009). The policyholders in Cincinnati Ins. Co. argued the district court applied the wrong measure of damages to the loss based on Mo. Rev. Stat. § 379.150. Id. The district court concluded the statute applies only to losses caused by fire and does not extend to losses caused by water. Id. The Eighth Circuit analyzed Mo. Rev. Stat. § 379.150 and affirmed the district court's decision. Id. This Court recognizes Mo. Rev. Stat. § 379.140 and Mo. Rev. Stat. § 379.150 are different statutes; however, the Eighth Circuit's analysis and reasoning guide the Court on the instant issue. The Court disagrees with Garvin's contention that he suffered a "total loss" because the loss was not caused by fire, and the Court finds Mo. Rev. Stat. § 379.140 does not apply in this case.

## APPOINTMENT OF AN UMPIRE

For the reasons stated above, Plaintiff Brent Garvin's Motion to Appoint Umpire (Doc. #26) is granted, Acuity's Motion to Stay Ruling on Plaintiff's Motion to Appoint Umpire (Doc. #38) is denied as moot, and the Court appoints the following umpire in this matter:

HONORABLE J. MILES SWEENEY (RETIRED)

## EXTENSION OF EXPERT DESIGNATION DEADLINES

Pursuant to Fed. R. Civ. P. 16(b)(4), the Court's Scheduling Order (Doc. #18) can be "modified only for good cause and with the judge's consent." The Court being duly advised of the premises, and for good cause shown, grants Garvin's Motion to Extend Deadlines to Designate Expert Witnesses (Doc. #50).

The Court finds good cause to modify the Scheduling Order (Doc. #18) based upon the case's procedural posture. This Order addresses several legal arguments made in motions filed by the parties before this matter was transferred to the current Judge. Garvin shall designate any

expert witnesses he intends to call at trial within thirty (30) days after the date the umpire enters his decision regarding the insurance policy's Appraisal Provision. Even though Acuity has previously disclosed its expert witnesses, Acuity shall be given an opportunity to amend its designation. Defendant shall re-designate any expert witnesses it intends to call at trial on or before thirty (30) days after Garvin designates his expert witnesses.

## CONCLUSION

Accordingly, it is hereby

ORDERED Defendant Acuity's Motion for Partial Summary Judgment (Doc. #23) is GRANTED IN PART and DENIED IN PART. It is further

ORDERED Plaintiff Brent Garvin's Motion to Appoint Umpire (Doc. #26) is GRANTED. It is further

ORDERED the Honorable J. Miles Sweeney (retired) is appointed as the umpire in this matter. It is further

ORDERED Acuity's Motion to Stay Ruling on Plaintiff's Motion to Appoint Umpire (Doc. #38) is DENIED as MOOT. It is further

ORDERED Garvin's Motion to Extend Deadlines to Designate Expert Witnesses (Doc. #50) is GRANTED. It is further

ORDERED Plaintiff shall designate any expert witnesses he intends to call at trial on or before thirty (30) days after the umpire enters his decision. Defendant shall re-designate any expert witnesses it intends to call at trial on or before thirty (30) days after Plaintiff designates his experts. This paragraph applies to all witnesses from whom expert opinions will be elicited, regardless of whether the witness was specially retained to provide trial testimony. Each party

shall ensure compliance with Fed. R. Civ. P. Rule 26(a)(2)(B) at the time of their expert witness designations.

      IT IS SO ORDERED.

DATED: <u>October 19, 2012</u>

                                          <u>/s/ Brian C. Wimes</u>
                                          JUDGE BRIAN C. WIMES
                                          UNITED STATES DISTRICT COURT